❐ Original          ❐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>Records and information associated with<br>Target Phones 1, 2, & 3, as further described<br>in Attachment A | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 25-823M(NJ)

Matter No. 2024R00247

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 3/4/2025 _____ *(not to exceed 14 days)*
❐ in the daytime 6:00 a.m. to 10:00 p.m.      ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to      Hon. Nancy Joseph      .
*(United States Magistrate Judge)*

❐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❐ for _____ days *(not to exceed 30)*      ❐ until, the facts justifying, the later specific date of _____ .

Date and time issued: 2/18/2025 @ 8:37 a.m. _____

_____
*Judge's signature*

City and state:   Milwaukee, WI _____

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

*Property to Be Searched*

This warrant applies to records and information associated with the cellular telephone assigned call number(s) **(847)630-2007 (Target Phone 1), (773)640-0115 (Target Phone 2), (224)242-2613 (Target Phone 3)**, for then following dates: September 22-24, 2024, and November 20-23, 2024 that is stored at premises controlled by T-MOBILE Wireless, a wireless telephone service provider headquartered at 4 Sylvan Way Parsippany, NJ 07054.

1

## ATTACHMENT B
## Matter No. 2024R00247

### *Particular Things to be Seized*

**I.      Information to be Disclosed by the Provider**

a.      To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period of September 22-24, 2024, and November 20-23, 2024. The following information about the customers or subscribers of the Account:

      i.  Names (including subscriber names, user names, and screen names);

      ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

      iii.  Local and long-distance telephone connection records;

      iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

      v.  Length of service (including start date) and types of service utilized;

      vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

      vii.  Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

a. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers); call detail records for voice, SMS, MMS, and data; email addresses and IP addresses (including source and destination); websites visited;

ii. information regarding the cell towers and sectors through which the communications were sent and received;

iii. per call measurement and timing advance data (PCMD, RTT, True Call, LOCDBOR, or similar); and

iv. All historical text content available pursuant to this warrant.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of Title 18, United States Code, Section 922(g) (Possession of a Firearm by a Prohibited Person), Title 18, United States Code, Section 922(a)(6) (False statements to Federal Firearm Licensee), Title 18, United States Code, Section 932(b)(1) (Straw Purchasing), Title 18 United States Code Section 933 (Illegal Transfer of a Firearm) and Title 18 United States Code Section 1001 (Making a False Statement to a Federal Law Enforcement Officer).

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

3

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Records and information associated with Target<br>Phones 1, 2, & 3, as further described in Attachment A | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**Case No. 25-823M(NJ)**

**Matter No. 2024R00247**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 922(g); 922(a)(6); 932(b)(1); 933; and 1001 | Possession of a Firearm by a Prohibited Person; False statements to Federal Firearm Licensee; Straw Purchasing; Illegal Transfer of a Firearm; and Making a False Statement to a Federal Law Enforcement Officer. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Paul Kozelek, ATF SA

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____ telephone _____ *(specify reliable electronic means).*

Date: 2/18/2025

*Judge's signature*

City and state: Milwaukee, WI

Honorable Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, **Paul Kozelek,** being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with the three cellular telephones assigned call numbers **(847)630-2007 (Target Phone 1), (773)640-0115 (Target Phone 2), and (224)242-2613 (Target Phone 3).** The information sought is stored at premises controlled by T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way Parsippany, NJ 07054. The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require T-Mobile Wireless to disclose to the government copies of the information further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been since January of 2020.  Prior to my employment with ATF, I was a Sheriff's Deputy with the Jackson County Sheriff's Office in Black River Falls, WI.  My duties included patrol, drafting, and executing search warrants, and investigations related to state and county criminal violations.  Prior to my tenure with the Jackson County Sheriff's Office, I served with the United State Marine Corps from 2004 until 2008, and the United States Marine Corps Reserve from 2011 until 2014. I left the Marine Corps as an E6/Staff Sergeant holding the

1

billet of Platoon Commander. I received my bachelor's degree in criminal justice administration from Viterbo University, La Crosse, WI in 2016.

3.     I have completed approximately 26 weeks of training at the Federal Law Enforcement Training Center in Glynco, Georgia, as well as the ATF National Academy. That training included various legal courses related to constitutional law as well as search and seizure authority. Additionally, I have received training on how to conduct various tasks associated with criminal investigations, such as interviewing, surveillance, and evidence collection.

4.     As an ATF Agent and as a state law enforcement officer I have participated in the investigation of firearms and narcotics-related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, and weapons. As a firearms investigator, I have interviewed many individuals involved in firearm and drug trafficking and have obtained information from them regarding acquisition, sale, importation, manufacture, and distribution of firearms and controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology utilized by the traffickers and abusers of controlled substances.

5.     Based on my training, experience and participation in drug trafficking and firearms trafficking investigations, I know and have observed the following:

6.     I have relied on informants to investigate firearms trafficking and drug trafficking. Through informant interviews and debriefings of individuals involved in those offenses, I have learned about the manner in which individuals and organizations finance, purchase, transport, and distribute firearms and narcotics both within and outside of Wisconsin. I have utilized informants to conduct "controlled purchases" of firearms and controlled substances from individuals, as opposed to licensed gun dealers. I have also conducted surveillance of individuals

2

engaged in firearms and drug trafficking and participated in the execution of numerous search warrants resulting in the seizure of drugs, firearms, ammunition, and magazines.

7. I know that firearms traffickers and drug traffickers often put their telephones in nominee names to distance themselves from telephones that are utilized to facilitate these and related offenses. I also know that firearm and drug traffickers often use proceeds to purchase assets such as vehicles, firearms, property, jewelry, and narcotics. I also know that firearm and drug traffickers often use nominees to purchase or title these assets to avoid scrutiny from law enforcement.

8. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

9. Based on the facts set forth in this affidavit, there is probable cause to believe Janet LANZANO (who is Michael LANSANO's mother), Michelle R. FARINELLA (who is Micheal LANZANO's wife), and Micheal LANZANO (who is a convicted felon) have aided and abetted each other and conspired with each other to illegally purchase, transfer, and conceal firearms so as to provide them to Micheal LANZANO, a prohibited person, due to his prior felony convictions. I believe there is probable cause to believe that the information sought for the three target cell phones will provide evidence that is relevant to the following violations: Title 18, United States Code, Section 922(g) (Possession of a Firearm by a Prohibited Person), Title 18, United States Code, Section 922(a)(6) (False statements to Federal Firearm Licensee), Title 18, United States Code, Section 932(b)(1) (Straw Purchasing), Title 18 United States Code, Section 933 (Illegal Transfer of a Firearm) and Title 18 United States Code, Section

3

1001(Making a False Statement to a Federal Law Enforcement Officer). Your affiant seeks to be able to obtain the information described in Attachment A for evidence, instrumentalities, contraband, or fruits of these crimes as further described in Attachment B. More specifically, your affiant seeks location data for three target phones: the cell phone of Janet LANZANO (**Target Phone 1**), the cell phone of Micheal LANZANO (**Target Phone 2**), and the cell phone of Michelle R. FARINELLA (**Target Phone 3**) during the following relevant dates: September 22-24, 2024, and November 20-23, 2024 as these dates encompass the time periods during which Janet LANZANO claimed she went to the US Bank in Lake Geneva, WI to visit the safety deposit box.

## PROBABLE CAUSE

10. As part of this investigation your affiant determined that **Target Phone 1** is registered to Janet LANZANO and used by Janet LANZANO; **Target Phone 2** is registered to Michelle FARINELLA and used by Michael LANZANO; and that **Target Phone 3** is registered to Michelle R. FARINELLA and used by Michelle R. FARINELLA.

11. On April 25, 2024, your affiant received a tip from Select Fire Weaponry, a licensed FFL, located at 2325 Parklawn Dr, Ste B Waukesha, WI 53186. They stated that the previous day a female identified as Janet LANZANO had called the store from **Target Phone 1** asking about the transfer of a Q Products model Honey Badger AR type pistol chambered in .300 Blackout bearing serial number AE4490 (the AR firearm herein). Janet LANZANO requested the firearm be transferred to Brew City Shooters Supply, another FFL, located at 2339 S. 43rd St. West Milwaukee, WI 53219. During the conversation the individual speaking with Janet LAZANO noted that she was not familiar with firearms in general and lacked the knowledge about the firearm in question. The employee noted that this lack of knowledge was consistent

4

with a potential attempt to commit a straw purchase of a firearm and caused the employee to take note. Your affiant is familiar with the style of firearm Janet LANZANO wished to buy and knows it to be a niche category firearm which is very expensive. In fact, the price quoted to Janet LANZANO for that AR firearm was $3,129.02.

12.　The following day, on April 25, 2024, a second female called Select Fire Weaponry from **Target Phone 3.** Although her voice was distinctly different from the woman who had called the previous day, the second female also identified herself as being Janet LANZANO and asked about the same firearm discussed the previous day. The second female also asked if they could find out when it would be delivered. The Caller ID from **Target Phone 3** also displayed "FARINEAALMICHE" as the name of the caller.

13.　Due to the straw purchasing indicators observed by Select Fire Weaponry including the fact that two different people identified themselves as being the same person, Select Fire Weaponry declined the transfer.

14.　As part of this investigation, your affiant continued to look into the attempted purchase between April 24 and 25 by a person who purported to be Janet LANZANO and discovered that Janet LANZANO was transferred the following items from Brew City Supply:

    a.　March 19, 2024, Janet LAZNANO purchased a Glock model 17, 9mm pistol bearing serial number AHDY964.

    b.　April 25, 2024, Janet LAZNANO was transferred a Huxwrx model Flow 7.62Ti suppressor bearing serial number P3002739. This suppressor would fit the Q Products model Honey Badger AR pistol (the AR firearm) described in paragraph 11.

15.　Your Affiant reviewed the ATF form 4473 from the above firearm transfers. On the form LANZANO answered "yes" to question 21.a which stated in part "Are you the actual

5

transferee/buyer of the firearm(s) listed on this form and any continuation sheet(s)? Warning: You are not the actual transferee/buyer if you are acquiring any of the firearms on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer any of the firearm(s) to you." In addition, LANZANO stated on the form that she resided at 2504 W. Wells St. #107 Milwaukee, WI 53233. As part of this investigation, commercially available license plate readers identified one of the cars owned by Janet LANZANO being in this location on the date of the transfer (see paragraph 26 below).

16.     Your affiant spoke with the landlord of 2504 W. Wells St., Milwaukee WI by phone. Your affiant was told that Janet LANZANO obtained this apartment in February of 2024, and that her application for the rental indicated that she previously resided at 5537 Wonder Woods Dr. Wonder Lake, IL 60097.

17.     Your affiant reviewed available databases and found that Janet LANZANO's son was Michael LANZANO (DOB XX/XX/1986). M. LANZANO has two felony convictions:

   a.   10/4/2006 Cook County case number 2004C4400680: Robbery

   b.   2/21/2006 Cook County case number 2004CR253490: Aggravated Battery w/Weapon

18.     Your affiant reviewed Elmwood Park Police Department report #20240000669 which occurred on May 4, 2024. That report showed that Michael LANZANO was arrested by Elmwood Park Police Department in Elmwood Park, IL on an outstanding warrant. In the report it showed Michael LANZANO's current address to be 7911 W. Oakleaf Ave. Elmwood Park, IL 60707. It also identified M. LANZANO's wife as Michelle R. FARINELLA (DOB XX/XX/1988) who resided at the same address. This name matched the caller ID at Select Fire Weaponry referenced in paragraph 11.

6

19.    On June 6, 2024, your affiant was made aware that Janet LANZANO was transferred the Q Products model Honey Badger AR type pistol bearing serial number AE4490 on that same date. The transfer occurred at Brew City Shooters Supply. Your affiant retrieved the ATF from 4473. It showed that Janet LANZANO answered "yes" to question 21. a which stated in part "Are you the actual transferee/buyer of the firearm(s) listed on this form and any continuation sheet(s)? Warning: You are not the actual transferee/buyer if you are acquiring any of the firearms on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer any of the firearm(s) to you."

20.    Your affiant spoke with employees who were involved in the transaction with Janet LANZANO. One of the employees stated that Janet LANZANO told them she was a nurse. She stated that she and her friends were worried about being robbed and she wanted the AR type pistol to protect herself. Your affiant later found that Janet LANZANO's nursing license was expired, and she was not permitted to work as a nurse in the state of Wisconsin. Your affiant knows from training and experience that this type of firearm normally is not used for self-defense as it is not optimal for self-defense in the context of being outside of the home or in a vehicle and that the cost of it would be prohibitive for many people.

21.    Between May and July of 2024 your affiant conducted multiple hours of surveillance at 2504 W. Wells St. in Milwaukee. Your affiant did not observe Janet LANZANO, nor Michael LANZANO or any of the vehicles associated with either one of them at that address.

22.    On July 26, 2024, your affiant went to 5537 Wonder Woods Dr., IL and found two of the four vehicles registered to Janet LANZANO were parked in the driveway. One of the vehicles was a silver in color 2009 Toyota Prius bearing IL license plate V35 6069. The other was a white in color Cadillac Escalade bearing IL license plate EN 45550.

7

23.     On September 6, 2024, your affiant reviewed information from the Illinois Department of Employment Security and found that Janet LANZANO was employed at Sheltered Village Nursing Home located at 600 Borden St. Woodstock, IL 60098. Your affiant also discovered this was approximately a 20-minute drive from Janet LANZANO's IL address of 5537 Wonder Woods Dr. Wonder Lake, IL to the Sheltered Village Nursing Home. Your affiant found that Woodstock, IL is approximately one and a half hours from Milwaukee, WI, by Google Maps. Based on this information, your affiant found it worthy of note that Janet LANZANO would drive such a distance from the address she claimed was hers, and also the Woodstock IL location.

24.     On September 6, 2024, your affiant received an email from the WI Department of Health Services. This stated there was no record of Janet LANZANO, Michael. LANZANO or Michelle R. FARINELLA being employed in the State of Wisconsin.

25.     Your affiant reviewed available information regarding the address of 5537 Wonder Woods Dr., IL and found that Janet LANZANO resided there with her husband Sandro LANZANO (DOB XX/XX/1945). Your affiant reviewed the criminal history of Sandro LANZANO and found the following felony convictions:

      a.   3/27/1978 Winnebago County (IL) Circuit Court case # 788CF381: Aggravated Battery

      b.   4/4/1978 IL DOC: Rape

26.     On September 6, 2024, your affiant reviewed commercially available license plate reader results for four vehicles registered to Janet LANZANO. For the Toyota Hatchback bearing IL license plate V35 6069 registered to Janet LANZANO the observed locations of this

8

vehicle were in both Illinois and Wisconsin. The commercially available license plate reader found the Toyota Hatchback was in Wisconsin during the following relevant dates:

    a.   June 6, 2024, in the early morning hours, the Toyota was first noted located at parked facing south on N 25th St. at W. Wells St. in Milwaukee, WI. Note: this is the same day Janet LANZANO picked up the AR firearm from Brew City Shooting Supply.

    b.  On June 10, 2024, during the mid-afternoon, the Toyota was located in the driveway of 5537 Wonder Woods Dr., Wonder Lake, IL (Janet LANZANO's Illinois address).

    c.  June 12, 2024, during the dawn hours, the Toyota was parked facing south at on N 25th St. at W. Wells St. in Milwaukee, WI which is the vicinity of the Milwaukee residence.

27.     The Cadillac Escalade bearing IL license plate EN 45550 registered to Janet LANZANO was observed numerous times by commercially available license plate readers as being located within Illinois and in the vicinity of her residence.

28.     The Ford Transit van bearing IL license plate 3269791 registered to Janet LANZANO was noted by commercially available license plate readers during 2024. All the locations in 2024 were at or near W. Oakleaf Ave at N 79th Ave. in Elmwood Park, IL. This address is consistent with the address of Michael LANZANO and Michelle R. FARINELLA of 7911 Oakleaf Ave., Elmwood Park, IL.

29.     The Ford pickup truck bearing IL license plate 3029832 registered to Janet LANZANO was noted by commercially available license plate readers as being at or near the known residence of Michael LANZANO and Michelle R. FARINELLA of 7911 Oakleaf Ave., Elmwood Park, IL. However, this pickup truck was located, on June 6, 2024, in the evening traveling south on Interstate 94 south of Somers Rd. near Kenosha, WI. (Note: this is the same

9

day Janet LANZANO picked up the AR firearm from Brew City Shooting Supply.) This Ford pickup was also noted in the vicinity of the Michael LANZANO and Michelle R. FARINELLA residence on February 20, 2024, April 30, 2024, May 7, 2024, June 10, 2024, June 17, 2024, and August 19, 2024.

30. On September 19, 2024, your affiant interviewed Janet LANZANO at her address of 5537 Wonder Woods Dr., IL. During that interview Janet LANZANO told your affiant that she obtained the apartment in Milwaukee, WI because she was going to separate from her husband. She claimed that she had moved to Milwaukee in February 2024 and moved back to Wonder Lake, IL in July of 2024. Janet LANZANO stated she did not have the suppressor with here as she left the suppressor and AR firearm with a friend in Hayward, WI, but refused to name the person nor to provide an address for the location she claimed to have left the firearm. Janet LANZANO stated that the AR firearm was secured in a safe and only she (Janet LANZANO) had access to it. Therefore, the cell phone locations sought by this warrant would show her travel from Haywood during the requested date range of September 19 to 25, 2024.

31. Your affiant asked why FARINELLA called about the firearm impersonating Janet. LANZANO. Upon being asked this question Janet LANZANO's demeaner, which had been a calm and relaxed demeanor suddenly changed. She became visibly tense, and her speech pattern changed. Janet LANZANO replied they were together that day and her (Janet LANZANO's) phone was dead. Your affiant asked who drove the black Ford pickup truck bearing IL. license plate 3029832 and was told it was FARINELLA. You affiant asked why FARINELLA met her the day she picked up the AR type pistol. Janet LANZANO replied that she was seeing her grandson and FARINELLA wanted to go shopping. You affiant asked where they were shopping, and J. LANZANO replied at Wal-Mart. Your affiant asked why

10

FARINELLA didn't just give her the phone to make the call. Janet. LANZANO could not provide an answer and was evasive.

32. Your affiant reviewed cell phone toll records obtained pursuant to a federal Grand Jury subpoena for the requested periods. Numerous of those records contradict the statements made by Janet LANZANO. For example, on the date that Michelle R. FARINELLA made the call pretending to be Janet LANZANO, the phone records contradicted Janet LANZANO's claim that FARINELLA called the gun store because Janet LANZANO's phone was not working. In fact, not only was Janet LANZANO on her phone (**Target Phone 1**) but also the records showed that Janet LANZANO was talking with Michelle R. FARINELLA (**Target Phone 3**) at that time and that Michael LANZANO (**Target Phone 2**) was communicating with both Michelle R. FARINELLA (**Target Phone 3**)  and Janet LANZANO (**Target Phone 1**) immediately around the time of and during the phone call made to Select Fire Weaponry by Michelle R. FARINELLA. This not only directly contradicted J. LANZANO's statements but also provides reason to believe that the three of them were discussing with each other the purchase from Select Fire Weaponry of the AR firearm.

33. Your affiant obtained updated cell phone toll records pursuant to a Grand Jury Subpoena for the same phones associated with Janet LANZANO, Michael LANZANO and Michelle R. FARINELLA. Your affiant found that within several minutes of the end of the interview with Janet LANZANO, Janet LANZANO's first call was to Michelle R. FARINELLA.

34. On September 25, 2024, your affiant received a series of unsolicited text messages from Janet LANZANO (from **Target Phone 1)**. She stated she had obtained a safe deposit box at US Bank in Lake Geneva, WI (just across the border from Wonder Lake, IL.) and that she had placed the suppressor in the safe deposit box. She also volunteered to your affiant

11

that she was the only one who had the keys for the safe deposit box. She was also sure to tell your affiant that she was the only one who had the keys for the safe deposit box.

35. Your affiant obtained by federal search warrant records for the device location data for Janet LANZANO, Michael LANZANO, and Michelle FARINELLA during the periods of time surrounding the above notable dates and times. Your affiant found that on September 23, 2024, Janet LANZANO and Michelle FARINELLA met in the area of Volo, IL. The data showed that Janet LANZANO was near her home in Wonder Lake, Il and Michelle was near her home in Elmwood Park, IL. Janet and Michelle called each other at approximately 8:09 AM. At approximately 9:24 AM they were both near Volo, IL when they again spoke by phone. The data further showed that Janet was in Lake Geneva, WI to open the safe deposit box at 11:12 AM.

36. Your affiant also observed that the phone number used by Michael LANZANO changed from (224)877-0059 to (773)640-0115 (Target Phone 2).

37. Your affiant later obtained federal subpoenas for the access records of the afore mentioned safe deposit box located at US Bank in Lake Geneva, WI. These showed that Janet LANZANO accessed the box on the following dates:

   a. September 22-24, 2024, and November 20-23, 2024, as these dates include the alleged dates of travel to and from the US Bank in Lake Geneva, WI.

38. Your affiant believes that there is probable cause to believe that Michelle R. FARINALLA and Michael LANZANO sought to use Janet LANZANO to straw purchase the AR firearm as well as the other firearm related items. Evidence of this can be inferred by the fact that Michelle R. FARINALLA impersonated Janet LANZANO to Select Fire Weaponry, that Janet LANZANO lied to your affiant regarding her phone activity at the time of the call, that Janet LANZANO was communicating with FARINELLA and FARINELLA was

12

communicating with Michael LANZANO during the time of the purchase of the AR pistol. Moreover, Janet LANZANO's explanation of the location of the suppressor and her refusal to provide the location of the suppressor when she claimed it was in Hayward, WI to your affiant during the interview, you affiant seeks to obtain a search warrant to identify the exact locations of Janet LANZANO, Michael LANZANO, and Michelle R. FARINELLA during periods of time when they were probably conspiring to or assisting each other in obtaining an AR firearm, a Glock, and a suppressor by using Janet LANZANO as a straw purchaser as well as transporting it to and from Illinois in Wisconsin. Your affiant knows that such transport is illegal if it is for the purpose for transferring possession of the suppressor.

39. Therefore, your affiant seeks this warrant to determine the device locations of Janet LANZANO, Michelle FARINELLA, and Michael LANZANO on September 22-24, 2024November 20-232024 as these dates encompass the time period where she claimed she went to the US Bank in Lake Geneva, WI to place or retrieve the suppressor.

### CONCLUSION

40. In my training and experience, I have learned that T-MOBILE Wireless is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.

13

Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

41. Based on my training and experience, I know that T-MOBILE Wireless can collect cell-site data about the TARGET PHONES 1-3. I also know that wireless providers such as T-MOBILE Wireless typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

42. Based on my training and experience, I know that wireless providers such as T-MOBILE Wireless typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as T-MOBILE Wireless typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the TARGET CELL PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

14

## AUTHORIZATION REQUEST

43.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

44.     I further request that the Court direct **T-MOBILE Wireless** to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.  Because the warrant will be served on T-MOBILE Wireless, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

15

## ATTACHMENT A
## Matter No. 2024R00247

### *Property to Be Searched*

This warrant applies to records and information associated with the cellular telephone assigned call number(s) **(847)630-2007 (Target Phone 1), (773)640-0115 (Target Phone 2), (224)242-2613 (Target Phone 3)**, for then following dates: September 22-24, 2024, and November 20-23, 2024 that is stored at premises controlled by T-MOBILE Wireless, a wireless telephone service provider headquartered at 4 Sylvan Way Parsippany, NJ 07054.

1

*Particular Things to be Seized*

## I. Information to be Disclosed by the Provider

a.      To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period of September 22-24, 2024, and November 20-23, 2024. The following information about the customers or subscribers of the Account:

i.  Names (including subscriber names, user names, and screen names);

ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

iii.  Local and long-distance telephone connection records;

iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

v.  Length of service (including start date) and types of service utilized;

vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii.  Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

2

viii.  Means and source of payment for such service (including any credit card or bank account number) and billing records.

a.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

i.  the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers); call detail records for voice, SMS, MMS, and data; email addresses and IP addresses (including source and destination); websites visited;

ii.  information regarding the cell towers and sectors through which the communications were sent and received;

iii.  per call measurement and timing advance data (PCMD, RTT, True Call, LOCDBOR, or similar); and

iv.  All historical text content available pursuant to this warrant.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of Title 18, United States Code, Section 922(g) (Possession of a Firearm by a Prohibited Person), Title 18, United States Code, Section 922(a)(6) (False statements to Federal Firearm Licensee), Title 18, United States Code, Section 932(b)(1) (Straw Purchasing), Title 18 United States Code Section 933 (Illegal Transfer of a Firearm) and Title 18 United States Code Section 1001 (Making a False Statement to a Federal Law Enforcement Officer).

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are

3

authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

4

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by [**PROVIDER**], and my title is

_____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of [**PROVIDER**]. The attached records consist of _____ [**GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)**]. I further state that:

    a.     all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of **[PROVIDER]**, and they were made by **[PROVIDER]** as a regular practice; and

    b.     such records were generated by **[PROVIDER'S]** electronic process or system that produces an accurate result, to wit:

        1.     the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of **[PROVIDER]** in a manner to ensure that they are true duplicates of the original records; and

1

2.      the process or system is regularly verified by **[PROVIDER]**, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____        _____
Date                                    Signature